Laubie, J.
I had not thought that it would be necessary for me to-take any part in announcing our conclusions in these cases, but as my brother, Judge Caldwell, on account of his voice failing him somewhat, has just asked me to relieve him of the duty of disposing of the Dellenbaugh case, I have thought proper to do so.
The statute governing proceedings of this character, prescribes two punishments, either of which may be inflicted, where an attorney is found guilty of the charges preferred against him. One is disbarment-absolute, and the other is suspension for a given period. And, in determining, of course, which of these punishments should be inflicted upon án attorney, the gravity and extent of the dereliction upon his part must-be regarded. The court should take into account all matters in exoneration of the offense and of its gravity, on the one hand, and, on the other hand, should take into account all matters which form an aggravation as it were, of the-conduct.of the defendant; that is, those things which tend to show the gravity of the offense and the motive of the-party in the performance of the criminal or unlawful act.
To that end, in undertaking to determine the punishment to be inflicted upon Mr, Dellenbaugh, we have had regard-to all the circumstances of the case. We have been somewhat enlightened in this investigation through the trial of *337 Mr. Burke, because the same matter precisely was involved in each trial. We have not been able to find anything in the circumstances of the case which,in any manner, tends to exonerate Mr. Dellenbugh of the gravity of the offense of which we have found him guilty — nothing that has been shown to ns, in the trial of either case, which in any manner exonerates him from the corrupt motive which is charged against him in the third specification of which he has been found guilty. On the other hand, many things have been developed by the testimony, which show conclusively to the court, the motive to have been deliberately corrupt, and therefore, to increase, as it were, the gravity of the offense of which he has been found guilty.
It may be remembered that my brother Hale, in delivering the opinion in this case, made the statement, that so far as the first charge against Judge Dellenbaugh was concerned, [which is the same as the first in the Burke case,) if the question could be determined upon the mere preponderance of the evidence, the court would undoubtedly have found him guilty.
We have many cases, where crime is directly charged against a defendant, not by criminal action, but by civil action by the party who claims to have been injured thereby, where a judgment awarding damages against defendant establishes the fact that he was guilty of a crime, and which would, therefore, have the tendency to disgrace him, and deprive him of his position in society almost as much as though he had been found guilty of the crime in a prosecution by the state, and yet in all these cases, almost universally, the issue is determined upon the preponderance of the evidence.
In this case, taking the gravity of it into consideration, and its other characteristics, we determined that it would be unjust to find Mr. Dellenbaugh guilty of the offense charged in the first specification, unless it were upon clear and convincing evidence — evidence that is so near to being beyond a reasonable doubt, that one can hardly distinguish between the two,
It was on one point in this first specification, and on one point only, that the court had this reasonable doubt, (and it gave the benefit of that doubt to Mr. Dellenbaugh), and *338 that was whether or not he knowingly participated in the threats made to Jane Doe and in the promise to shield her from public disgrace, in order to obtain the ten thousand dollars. There was a conflict of evidence upon that proposition. To convict him of that, the case must have rested substantially upon the testimony alone of Mr. Burke. There was testimony which contradicted the statements of Mr. Burke, as to Dellenbaugh sending him to Jane Doe. Miss Kent, who Burke said was present when they were made, as well as Dellenbaugh, denied these statements. Christian, the detective, while his testimony tended to confirm them, told that he had made no reports whatever to Judge Dellenbaugh; that while he had been retained by him about the 22nd or 23rd of April, 1895, to investigate this matter, yet he had made no reports to Dellenbaugh, but that Burke had gotten the reports. And so it was that some doubt was thrown upon the proposition as to whether or not, Dellenbaugh had participated in that part of the transaction. But in determining the punishment to inflict upon Dellenbaugh, is he to be cleared entirely of the criminating circumstances shown in regard to that first specification? Clearly not. We could nit take Mr. Burke’s statements, especially against this contradictory evidence, and deduce therefrom that Dellenbaugh did participate in the unlawful method of obtaining this money. We could not use Burke’s testimony on that point against Dellenbaugh, although we felt that substantially it was true. As against Burke himself we could deduce from the circumstances he detailed, what he must have said to Jane Doe, although he denied it. While he undertook to exonerate himself, yet the facts he detailed indelibly impressed upon the act all the characteristics of blackmail; no other explanation could be given of such a transaction. It was improbable that a woman, young and unmarried, should be approached as she was, and within a few hours compelled to disgorge ten thousand dollars, unless threats bad been made against her to disgrace her; and subsequent transactions show, she would not have paid the money unless she had been guaranteed protection against exposure. While we could thus well find Burke guilty of this specification, notwithstanding his denial of the alleged *339 "threats and promises, we were doubtful as to Dellenbaugh, under the circumstances; so we gave to Mr. Dellenbaugh the benefit of the doubt. But as I have already said, the incriminating circumstances shown by the evidence as to the first charge, may well be taken into consideration against him, when we undertake to fix the penalty.
As to the second charge in regard to the divorce, it was stated by my coadjutor, Judge Hale, that we could not regard that specification of the charge, because it' was substantially a charge against him of corrupt action as a judge.
While I have grave doubt as to the jurisdiction of the ■court to try Judge Dellenbaugh while he is upon the bench, yet we had nothing to do with that question in this trial, because it had already been determined by this court, on demurrer, that it did have jurisdiction; but we were unanimous in the opinion, that in regard to the second specification we had no jurisdiction; that whatever •offense had been committed in granting the divorce, had been committed in his character and capacity as a judge,and that it devolved upon some other tribunal, in some other proceéding to call him to account for that. But, again, as reflecting upon the specification of which we did find him guilty, in developing incriminating circumstances showing the motive with which he acted, we had a perfect right to and we did look to the facts and to the circumstances developed in regard to such charge, upon the trial.
We were of the opinion, that it was beyond question that in the beginning Mr, Dellenbaugh was retained, not to bring suit for alineation of the affections of the husband, but for a divorce. This lady, Mrs. Manning, had already left her husband; they had already separated; there was nothing staring her in the face but divorce; she was anxious for a divorce. The very fact that this decree had not been entered upon the record of the court, was developed through her anxiety to be re-married — this woman whose feelings had been so lacerated that they required twenty-five thous- and dollars to soothe them (that being the amount she insisted Jane Doe should pay), was already looking for a second husband, and soon took one, and the necessity arose to show that she had been legally divorced, and that developed ’the fact that the decree had not been entered of record. *340 Every thing points to the fact that Mrs. Manning retained' Dellenbaugh only for the purpose of obtaining a divorce. Mr. Hickox, in whose family Mrs. Manning was then residing, testified that at her request be went and saw Mr. Del-lenbaugh and asked him if he would act as her attorney in obtaining a divorce, and that at Dellenbaugh’s request he’ brought her, and introduced her to Dellenbaugh, at the latter’s office. It appears that afterwards he proceeded a» her attorney in obtaining the evidence necessary to obtain a divorce for her on the sole ground upon which she declared she would accept it — the sole ground, because she was an Episcopalian — -which was that her husband bad committed adultery; and adultery with Jane Doe was to be the only ground for the divorce. So that, with that object in view, detectives were put upon the track of her husband and of this Jane Doe, that proof might be obtained of illicit intercourse between them; and it was found that he was with her night afternight until early morning hours, and in a house of prostitution, as assignation houses are.
Now, with that situation of affairs, Judge Dellen-baugh directs the character of the petition for divorce that is to be filed, alleging adultery without naming the corespondent, and is cognizant of all the secrecy that is thrown around it according to the agreement with Jane Doe, who had paid ten thousand dollars to be relieved of the publicity. With all these facts staring him in the face, and the name of the case not appearing anywhere upon the records of the court, in the private room adjoining the court-room in-which Judge Dellenbaugh was then holding court as a judge, he, who had been attorney for the purpose of obtaining the divorce, he, who had received eleven-hundred dollars growing out of the transaction as a fee, took cognizance of the case, and granted the divorce, as we must assume, upon the ground of adultery, when there was before him no person legally competent to tell of Manning’s conduct — illicit conduct with Jane Doe.
Now, while upon the bench, he had neither seen, approved of, nor signed any decree; but after he retired from the bench Mr, Dellenbaugh not only O, K.’d a decree, but falsely represented that he had 0. K.’d the decree while still a judge, and thus obtained what Burke was not able to do, *341 a record cf a decree to Mrs. Manning of a divorce, upon the ground that I have stated.
It seems now, that these matters are so closely interwoven and connected, each fact following the other so closely,that it is impossible to separate them. They show the motive in the misrepresentation to the clerk of the court, to be carried to the judges then upon the bench, and who had control of the records, that he had not only heard the case and granted the decree, but that he had 0, K.’d the journal entry before he had left the bench. He had corruptly heard the divorce; he had corruptly granted it, if he granted it at all and I presume he did, and it follows as a necessary consequence that when he exerted himself as an attorney afterwards to get that decree entered of record, he was carrying out and giving force and effect to the corrupt motive that had animated him before.
These are the reasons why I have said that we know of no circumstance of exoneration in regard to the offense of which Mr. Dellenbaugh has been convicted; that all the circumstances are of a criminal nature and show conclusively the corrupt intent in all that he did; that this was unprofessional conduct, and could have proceeded only from a corrupt motive.
The result is: The judgment in the case against Dellen-baugh will be as in the Burke case, disbarment.
Judge Caldwell: The entry will be drawn in this case showing the motion filed for a new trial'on behalf of Burke.
Me. FoRAN. Exception; and I wish to be heard in that case.
Judge Caldwell: Yes,and do you want findings of fact?
Me. Foean: Yes.
Judge Caldwell: We will fix the compensation at $100.00 for each member of the committee in the case, and provide for the stenographer- — a large part of the work has been done by a stenographer — and I think the court will authorize her to be paid by the county.
The-costs in the Dellenbaugh case will be paid by Dellen-baugh.
The costs in the Burke case will be paid by Burke, aside from those I have mentioned.